**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ELLEN M. BROWN,**

                                             **Plaintiff,**

**-against-**                                              **08-CV-592**

**THE RESEARCH FOUNDATION OF SUNY,**[1]
**MELISSA NECOSIA, JOHN SPARACO,**
**EDMOND OVERBEY, BRIDGET FISH-GRAVES,**
**and BERTHA RADILOFF,**

                                             **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


                                   **DECISION & ORDER**

**I.      INTRODUCTION**

        Plaintiff commenced this action *pro se* alleging claims pursuant to Title VII of the

Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act ("ADA"), the Age

Discrimination in Employment Act ("ADEA"), and 42 U.S.C. § 1983 ("Section 1983").

Defendants have moved to dismiss the claims pursuant to Fed. R. Civ. P. 12(b)(1),

12(b)(6), and 56.  See Def. Nicosia's Motion, dkt. # 27; Defs. Research Foundation of

SUNY, Sparaco, Overbey, Fish-Graves, and Radiloff's Motion (collectively "The Research

_____

        [1]This defendant was incorrectly identified in the Complaint as "The Research Foundation of SUNY
Oneonta 13820."

1

Foundation Defendants"), dkt. # 31.[2]  Plaintiff has opposed the motions. See Pl.'s Opp,

dkt. # 36; Pl.'s Sur-Reply, dkt. # 42.

## II.    STANDARDS OF REVIEW

### a.    FED. R. CIV. P. 12(b)(1)

A case is to be dismissed for lack of subject matter jurisdiction pursuant to FED. R.

CIV. P. 12(b)(1) when the district court lacks the statutory or constitutional power to

adjudicate it.  Makarova v. United States, 201 F. 3d 110, 113 (2d Cir. 2000).  A plaintiff

asserting subject matter jurisdiction has the burden of proving by a preponderance of the

evidence that it exists. See Luckett v. Bure, 290 F.3d 493, 497 (2d Cir. 2002); see also

Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996).  When a defendant moves to dismiss

claims pursuant to Fed. R. Civ. P. 12(b)(1), "the movant is deemed to be challenging the

factual basis for the court's subject matter jurisdiction." Cedars-Sinai Medical Ctr. v.

Watkins, 11 F.3d 1573, 1583 (Fed. Cir. 1993).  For purposes of such a motion, "the

allegations in the complaint are not controlling . . . and only uncontroverted factual

allegations are accepted as true." Id.  Both the movant and the pleader are permitted to

use affidavits and other pleading materials to support and oppose the motion to dismiss

for lack of subject matter jurisdiction. See Makarova, 201 F.3d at 113; Filetech S.A. v.

France Telecom, S.A., 157 F.3d 922, 932 (2d Cir. 1998); John Street Leasehold, LLC v.

Capital Mgt. Res., L.P., 2001 WL 310629, at *2 (S.D.N.Y. March 29, 2001). "Thus, the

standard used to evaluate a Rule 12(b)(1) motion is similar to that used for summary

judgment under Fed. R. Civ. P. 56." Lopresti v. Merson, 2001 WL 1132051, at *5

---

[2]Melissa Nicosia is an employee of SUNY Oneonta and is represented by the New York State Attorney General's Office.

(S.D.N.Y. Sept. 21, 2001).

> **b.** **F<small>ED</small>. R. C<small>IV</small>. P. 12(b)(6)**

A motion under F<small>ED</small>. R. C<small>IV</small>. P. 12(b)(6) tests the legal sufficiency of the claims

pleaded in the case.  The Supreme Court recently elaborated on the standard to be used

in addressing a Rule 12(b)(6) motion, and again explained Rule 12(b)(6)'s interrelationship

with the federal pleading standard under F<small>ED</small>. R. C<small>IV</small>. P. 8.  See Ashcroft v. Iqbal, --- S.Ct.

----, 2009 WL 1361536, at *12 -*13 (May 18, 2009).  In this regard, the Court explained:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a
> "short and plain statement of the claim showing that the pleader is entitled to
> relief."  As the Court held in [Bell Atlantic Corp. v. Twombly, 550 U.S. 544,
> 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007]], the pleading standard Rule 8
> announces does not require "detailed factual allegations," but it demands
> more than an unadorned, the-defendant-unlawfully-harmed-me accusation.
> Id., at 555, 127 S. Ct. 1955 (citing Papasan v. Allain, 478 U.S. 265, 286, 106
> S. Ct. 2932, 92 L. Ed.2d 209 (1986)). A pleading that offers "labels and
> conclusions" or "a formulaic recitation of the elements of a cause of action
> will not do." 550 U.S., at 555, 127 S .Ct. 1955.  Nor does a complaint suffice
> if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id.,
> at 557, 127 S. Ct. 1955.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual
> matter, accepted as true, to "state a claim to relief that is plausible on its
> face." Id., at 570, 127 S. Ct. 1955.  A claim has facial plausibility when the
> plaintiff pleads factual content that allows the court to draw the reasonable
> inference that the defendant is liable for the misconduct alleged. Id., at 556,
> 127 S. Ct. 1955.  The plausibility standard is not akin to a "probability
> requirement," but it asks for more than a sheer possibility that a defendant
> has acted unlawfully. Ibid.  Where a complaint pleads facts that are "merely
> consistent with" a defendant's liability, it "stops short of the line between
> possibility and plausibility of 'entitlement to relief.'" Id., at 557, 127 S. Ct.
> 1955 (brackets omitted).
>
> Two working principles underlie our decision in Twombly.  First, the tenet
> that a court must accept as true all of the allegations contained in a
> complaint is inapplicable to legal conclusions. Threadbare recitals of the
> elements of a cause of action, supported by mere conclusory statements, do
> not suffice. Id., at 555, 127 S. Ct. 1955 (Although for the purposes of a
> motion to dismiss we must take all of the factual allegations in the complaint

as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)).  Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Id., at 556, 127 S .Ct. 1955.  Determining whether a complaint states a plausible claim for relief will [] be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."  Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 2009 WL 1361536, at *12 -*13.

In deciding a Rule 12(b)(6) motion, review "is generally limited to the facts and allegations that are contained in the [challenged pleading] and in any documents that are either incorporated into the [pleading] by reference or attached to the [pleading] as exhibits." Blue Tree Hotels Inv., Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir.  2004) (citations omitted).  Dismissal is appropriate where the pleading fails as a matter of law. Phelps v. Kapnolas, 308 F.3d 180, 187 (2d Cir. 2002).

### c.    FED. R. CIV. P. 56(c)

A court may grant summary judgment pursuant to FED. R. CIV. P. 56(c) only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party.

4

Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the movant is able to establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The nonmoving party must show, by affidavits or other evidence, admissible in form, that there are specific factual issues that can only be resolved at trial.  Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995).

In determining whether to grant summary judgment, the Court must resolve all ambiguities and draw all reasonable inferences from the submitted materials in a light most favorable to the non-moving party.  Patterson v. County of Oneida, N.Y., 375 F.3d 206, 219 (2d Cir. 2004).  However, the nonmoving party cannot defeat summary judgment by "simply show[ing] that there is some metaphysical doubt as to the material facts," Matsushita, 475 U.S. at 586, or by a factual argument based on "conjecture or surmise." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  In this regard, a party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in the pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998); see also Govan v. Campbell, 289 F.

5

Supp.2d 289, 295 (N.D.N.Y. 2003).[3]

## III.   BACKGROUND

Plaintiff commenced this action *pro se* against her former employer, The Research Foundation of SUNY ("Research Foundation"), and former co-workers John Sparaco ("Sparaco"); Edmond Overbey ("Overbey"); Bridget Fish-Graves ("Fish-Graves"); Bertha Radiloff ("Radiloff"), and Melissa Necosia ("Necosia").  See Complaint [dkt. # 1].  The following facts are taken from the Complaint, are not in dispute, or are construed in the light most favorable to Plaintiff.

### a.   Plaintiff's Employment

The Research Foundation is a private, non-profit educational corporation whose primary responsibility is to administer grants and sponsored programs on behalf of the State University of New York.  One of the programs administered by the Foundation is the High School Equivalency Program ("HEP") at the State University of New York at Oneonta ("SUNY Oneonta"), a residential GED program serving migrant and seasonal farm workers and their dependents. The Foundation employed plaintiff as a teacher's assistant in the HEP program from August 2000 until July 17, 2006.

In 2005, Plaintiff complained of "sexual discrimination" when Defendant Sparaco, the Director of HEP, purportedly exposed her to "sexual explicit [*sic*] exploitation of the female vagina on his computer." Compl. ¶5a.   Also in 2005, Sparaco used profanity in Plaintiff's presence, ridiculed and intimidated her, "taunted [her] un-relentlessly," caused her to suffer in "a hostile and insecure environment" leading to "stress/anxiety/depression."

---

[3](A plaintiff may not create a question of fact by simply making vague, conclusory allegations or broad denials.).

Id., at ¶¶ 5c-5d.   Sometime in 2005 Plaintiff went out on disability leave and, when she

returned to work in January 2006, Sparaco refused to sign Plaintiff's time sheets, moved

her desk to the back of the classroom behind a filing cabinet, failed to inform Plaintiff of

staff meetings, and "changed [Plaintiff's] job description." Id., at ¶¶ 5e-5f.  In July 2007,

Sparaco "discriminated/retaliated by terminating [Plaintiff on] July 17, 2006 for not

speaking Spanish when the Federal Grant does not require the teacher's assistant to be

bilingual."  Id. ¶ 5.   Brown further alleges that, after she was terminated, Sparaco

"exploited my sex, age, and locality, and used me to advertise . . . [ by] . . . placing my

picture on HEP website a year after I was no longer employed." Id., at ¶ 5g.

Plaintiff alleges that Defendant Overbey, a teacher in the HEP program, failed to

accommodate Plaintiff's disability.  Particularly, Plaintiff alleges that on April 18, 2006,

Overbey "forced me to clean the room . . . thereby causing harm to me. . .  I was on

disability with limited duty (sedentary desk job only) after I sustained a knee, shoulder,

elbow and cheek injury in a fall at work." Id., at ¶ 3.  Plaintiff further alleges that Overbey

(on unspecified dates in 2006) generally thwarted Brown from succeeding at her job,

"blocked my path," and "yanked papers from under my arm." Id., at ¶¶ 3a- 3c.  In addition,

Plaintiff alleges that Overbey presented a false complaint and/or libelous information

which led to a warning being issued to her by co-defendant John Sparaco for

insubordination in the workplace and leaving the workplace without authorization. Id. at

¶3d; February 9, 2006 Memorandum to Plaintiff from John Sparaco, attached to Compl. as

Ex. p. 6.

Plaintiff alleges that, while she was working for the Research Foundation,

Defendant Fish-Graves, the Assistant Director of the HEP program, discriminated against

7

her based upon her "disability" through: (a)  "physically put[ting] her hands on me, dragging me thereby intentionally causing more harm to my injuries of the knee, shoulder and elbow;" (b) failing to provide Plaintiff with a proper elevator key that allowed building access as Plaintiff desired; (c) "sen[ding] [a] memo to campus exposing my disability against my right to privacy;"[4] (d) "sexually harass[ing]" Plaintiff by making lewd comments to her; (e) threatening, harassing and/or intimidating Plaintiff,[5] and (f) "deliberately expos[ing] [Plaintiff] to a student with TB." Compl. at ¶¶4-4i.  Plaintiff further alleges that, after her employment ended, Fish-Graves "directed/aided in placing my picture 6 times . . . on several search engines on HEP website . . .  causing extreme emotional distress to me. She discriminated and retaliate by doing so." Compl. ¶ 4b.

Plaintiff alleges that Defendant Radiloff "stared at me for 3 hours during class time, displaying intentional harassment, stalking which [is] against the law." Id. at ¶6.  Plaintiff further alleges that in "2005[,] [Radiloff] told me she had a brain tumor and indeed she did not; used it as an excuse to get away with harassment and deny me my employment rights." Id. at ¶ 6a.  Plaintiff contends that Radiloff let Plaintiff instruct both English and Spanish classes while Radiloff "was working for other schools" although Plaintiff was "not compensated against labor laws." Id. ¶ 6b.  Plaintiff further contends that Radiloff "sexually

---

[4]The Memo to which Plaintiff refers is attached to the Complaint as Ex. p. 8.  It is a Memo from Fish-Graves to Brown dated April 27, 2006 which indicates that an elevator key is being provided ("Attached, please find elevator key # 1148") for Plaintiff's personal use while on temporary disability, and that Plaintiff must return the key when her doctor allowed her to use to the stairs or at the end of the 2005-06 school year. Compl. Ex. p. 8.

[5]Plaintiff makes such allegations as: "Bridget intimidated me by telling me her husband had to shoot someone as though she had the resources to eliminate me causing a threatening environment," and "Bridget called me on the phone *whispering* when I was at my home suffering from emotional disability, deliberately provoking and causing a set-back in my recovery and extended my healing process." Compl. ¶¶ 4d & 4f (emphasis in original).

harassed me by asking me: 'How is your sex with your husband and do you get along.'" Id. at ¶ 6c. Radiloff purportedly "increased surveillance and wouldn't let me get forms off the computer to fulfill my job requirements;" "spoke in provoking tones to me[,] constantly objecting to where I sat;" did not allow Plaintiff to take a break; and commented "about other people getting fired . . .  against [Plaintiff's] civil rights." Id. at ¶ 6e.

Plaintiff asserts that Defendant Nicosia, the Human Resources Coordinator for the Research Foundation, "failed to protect my rights established in Research Foundation policies outlining sexual harassment, discrimination, disability discrimination, retaliation, and job protection." Id. at ¶ 7.  Plaintiff alleges that, after she  filed a complaint opposing discrimination, "[Nicosia] took negative action against me" by: (a) "call[ing] me in April 2006 while I was recovering from my knee, shoulder, elbow, and cheek injury and ordered me back to work . . . [although] [t]he doctor had not released me;" (b) yelling at Plaintiff even though Nicosia "had documents to ascertain [Plaintiff's] emotional disability;"  (c) intentionally withholding from Plaintiff  "information pertinent to resolution [*sic*] specifically a letter from Mr. Sparaco wanting me immediately terminated January 10, 2006," (d) laughing at and ridiculing Plaintiff when she reported "abuse, intimidation, [and] discrimination [she] received from Mr. Sparaco;" (d) not providing Plaintiff with telephone access to report if a student became suicidal; (e) threatening Plaintiff by walking "right up close to [Plaintiff] (in [her] face) and [saying] 'now I am not going to let you put words in my mouth' speaking in a provoked tone;" (f) failing to "investigate a complaint from [co-defendant] Mr. Overbey on [Plaintiff's] behalf" and giving Plaintiff "a warning without Plaintiff's facts;" (g) failing to pass on a witness statement to Nicosia's director; (h) failing to investigate a complaint that Plaintiff made against Sparaco asserting that Sparaco

made an inappropriate statement to a student; and (i) failing to send Plaintiff's complaints to "Affirmative Action." Id. at  ¶¶ 7a-7m.

Plaintiff's employment was terminated on July 17, 2006.  Defendants contend that Plaintiff's position was eliminated due to the changing needs of the program, more specifically, the need for bilingual staff in the classroom.  Plaintiff alleges, however, that Defendants "discriminated/retaliated by terminating me July 17, 2006 for not speaking Spanish when the Federal Grant does not require the teacher's assistant to be bilingual." Id. at ¶ 5. Plaintiff further alleges that she "was the only employee eliminated." Id.

**b.    First Administrative Complaint**

On November 13, 2006, Plaintiff filed a Verified Complaint with the New York State Division of Human Rights ("Division"), accusing the Research Foundation of violations of the New York State Human Rights Law ("NYSHRL"), Title VII, the ADA, and the ADEA "because of age, sex, disability, disability [*sic*], opposed discrimination/ retaliation." See Research Foundation Defs.' Ex. A ("First DHR Complaint").  In the First DHR Complaint, Plaintiff identified July 17, 2006 as both her last day of employment and the date the "most recent or continuing discrimination" occurred. Id.  She asserted claims of disparate treatment as well as claims of on-going harassment based upon the identified protected classifications of age, sex, disability, and opposition to a discriminatory practice (i.e. retaliation). Id.  Plaintiff simultaneously filed a charge  with the Equal Employment Opportunity Commission ("EEOC") "making precisely  the same allegations she made in the First DHR Complaint."  Research Foundation Defs.' Local Rule 7.1 Stat. Mat. Facts

(dkt. # 31-9), ¶ 4; Pl. Local Rule 7.1 Response to Research Foundation Defs.' Stat., ¶ 4.[6]

On April 27, 2007, the Division issued a Determination and Order After

Investigation finding "no probable cause" to believe the Foundation had committed the

unlawful discriminatory practices complained of, and the Division closed its file. Research

Foundation Defs.' Ex. B [dkt. # 31-3]. [7]   On June 5, 2007, the EEOC issued a right-to-sue

notice ("First RTS Notice"), advising Plaintiff that it had adopted the Division's findings and

was therefore closing its file.  Research Foundation Defs. Ex C, p. 6.  The First RTS

Notice also expressly informed Plaintiff that she could file a lawsuit under federal law

based on the claims in the First EEOC Charge "**WITHIN 90 DAYS** of your receipt of this

---

[6]Based on the record, which contains only the First DHR Complaint, it appears that the First DHR Complaint was dual filed with the EEOC. See Anderson v. Nassau County Dept. of Corrections, 2008 WL 752449, *10 (E.D.N.Y. 2008)("Pursuant to a work-sharing arrangement between the EEOC and the Human Rights Division, charges received by the Human Right Division are automatically deemed dual-filed with the EEOC.").

[7]In this regard, the Division found, "after investigation, and following opportunity for review of related information and evidence by the named parties:

> Investigation did not support complainant's contention that she was treated in a discriminatory manner and terminated because of her age, sex, disabilities and in retaliation for filing an internal complaint. Complainant worked for respondent for several years as a teaching assistant, and was let go when her position was eliminated due to changing needs in the program and the need for bilingual staff in the classroom. Complainant's position was not replaced, but the dorm counselor and college students, who are bilingual, have been assisting. Respondent also eliminated the second teacher position, and now has one teacher who is bilingual. During complainant's tenure, the staff in the program were mostly female, with the exception of the director and one male teacher. During 2005-06 there were 7 staff in the program, and 4 were over 50 years of age. Investigation revealed that complainant was accommodated time off for her disabilities, and returned to work. Investigation revealed that complainant filed an internal complaint regarding an incident between her and the director, but this complaint did not raise any claim of discrimination based on age, sex, or any other protected category. The internal complaint was investigated and handled according to procedure, and attempts were made to resolve the issues. Respondent articulated legitimate independent and non-discriminatory reasons to support their actions and these reasons were not demonstrated to be a pretext for illegal bias.
>
> The complaint is therefore dismissed and the file is closed.

Research Foundation Defs.' Ex. B [dkt. # 31-3].

notice, or your right to sue based on this charge will be lost." Id. (emphasis in original).

Plaintiff acknowledges receiving this First RTS Notice on June 10, 2007.  Pl. Response to

Def.'s Stat. of Facts, ¶ 9.

> **c.**      **Second Administrative Complaint**

On August 27, 2007, Plaintiff filed a second Verified Complaint with the Division.

See Research Foundation Def.'s Ex. D ("Second DHR Complaint"). In the Second DHR

Complaint, Plaintiff contended that by posting photographs depicting her and several HEP

students on the HEP website several months after Plaintiff's employment had ended, the

Research Foundation violated the NYSHRL, Title VII, the ADA and the ADEA "because of

age, sex, disability, opposed discrimination/retaliation." Id.  Plaintiff simultaneously filed a

charge with the EEOC based on this same allegation. Id. ("Second EEOC Charge").

On January 18, 2008, the Division issued a Determination and Order After

Investigation finding no probable cause to believe the Research Foundation had engaged

in the unlawful discriminatory practices complained of and dismissed Plaintiff's Second

DHR Complaint.  Research Foundation Defs' Ex. E at ¶ 2.  Thereafter, on April 4, 2008,

the EEOC issued a second right to-sue notice ("Second RTS Notice"), advising Plaintiff

that any lawsuit under federal law based on the allegations in her second

complaint/charge had to be commenced within 90 days of receipt of the notice. Research

Foundation Defs' Ex. C at p. 7.

> **d.**      **Federal Action**

Plaintiff commenced the instant action on June 5, 2008, asserting claims pursuant

to Title VII, the ADA, the ADEA, and Section 1983.  Plaintiff alleges that "[t]his action is

[for] unlawful retaliation and adverse employment action. I was a covered individual and engaged in protected activity." Compl. at ¶5.  Defendants move pursuant to Fed. Rules of Civil Procedure 12(b)(1), 12(b)(6), and 56 to dismiss the action in its entirety.

## IV.    DISCUSSION

### a.    Timeliness of Plaintiff's Title VII, ADA, and ADEA claims

Defendants argue that the majority of the Plaintiff's Title VII, ADA, and ADEA claims must be dismissed because either (a) the claims were not submitted to an appropriate administrative agency in a timely fashion, or (b) Plaintiff did not commence the instant lawsuit within 90 days of receipt of the First RTS Notice.

#### 1.    Administrative Procedures

The applicable administrative exhaustion procedures of Title VII, the ADA, and the ADEA require that, as a predicate to filing a civil action, an aggrieved employee must file a complaint with the EEOC or the New York State Division of Human Rights within 300 days of the alleged discriminatory act or acts.  See 42 U.S.C. § 2000e-5(f); 29 U.S.C. § 626(d); 42 U.S.C. § 12117 (incorporating Title VII's enforcement mechanisms); Williams v. N.Y. City Hous. Auth., 458 F.3d 67, 69 (2d Cir. 2006).   "The requirement that administrative remedies be exhausted is designed 'to give the administrative agency the opportunity to investigate, mediate, and take remedial action.'"  White v.  N.Y.C. Dept.  Of Educ., 2008 WL 4507614 (E.D.N.Y. Sept.  30, 2008)(quoting Stewart v. United States Immigration & Naturalization Serv., 762 F.2d 193, 198 (2d Cir. 1985) and citing Butts v. City of New York Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1401 (2d Cir. 1993), superseded on other grounds by Hawkins v. 1115 Legal Serv. Care, 163 F.3d 684 (2d Cir. 1998)).

These statutory filing periods are "analogous to a statute of limitations," <u>Van Zant v. KLM Royal Dutch Airlines</u>, 80 F.3d 708, 712 (2d Cir. 1996), and must be adhered to in order to vest the district court with jurisdiction to hear the Title VII, ADA, and ADEA claims. <u>Deravin v. Kerik</u>, 335 F.3d 195, 200 (2d Cir. 2003);[8] <u>White</u>, 2008 WL 4507614 at * 2.[9]

The second step of the administrative exhaustion procedures under Title VII and the ADA requires commencement of the civil action within 90 days of receipt of the EEOC's right-to-sue notice. <u>Grey v. Promenade Rehab. & Care Ctr.</u>, 145 Fed. Appx. 705, 706 (2d Cir. 2005); <u>Kosakow v. New Rochelle Radiology Assocs., P.C.</u>, 274 F.3d 706, 713-14 (2d Cir. 2001); 42 U.S.C. §§ 2000e-5(f), 12117(a). The 90-day time limit begins to run upon plaintiff's receipt of the right-to-sue notice and operates as a statute of limitations. <u>Fletcher v. Runyon</u>, 980 F. Supp. 720, 721 (S.D.N.Y. 1997).

Unlike Title VII and ADA claims, a right-to-sue notice is generally not a statutory prerequisite to an action brought in federal court under the ADEA. <u>McPherson</u>, 457 F.3d at 214-15. A Plaintiff must only wait sixty days after filing the EEOC charge to bring an ADEA suit. <u>Holowecki v. Fed. Express Corp.</u>, 440 F.3d 558, 563 (2d Cir. 2006). However, where the EEOC charge results in the issuance of a right-to-sue notice, the Plaintiff must file the ADEA suit within 90 days of receipt of the notice. <u>Id.</u>; 29 U.S.C. § 626(e).

## 2. Plaintiff's Compliance with Administrative Procedures

Plaintiff's last day of employment with the Research Foundation was July 17, 2006. Three hundred (300) days thereafter was May 13, 2007. She filed her First DHR

---

[8](A district court may only hear Title VII claims that were included in a timely EEOC charge or that are "reasonably related" to the discrimination alleged in the EEOC charge.).

[9]("[A] district court only has jurisdiction over Title VII claims that are either included in an EEOC charge or are "reasonably related" to the discrimination alleged in the EEOC charge").

14

Complaint on November 13, 2006, which is well within the 300-day period.

Plaintiff argues that all of her current Title VII, ADA, and ADEA claims, with the exception of the claims arising from the posting of her picture on the employer's website (which occurred after her employment ended), were included either in the body of the First DHR Complaint or in the attachments to this complaint. See Pl's Mem. L. in Resp. to Research Foundation Defs.' Mot., pp. 14-15. Thus, Plaintiff essentially argues that she has satisfied the first step of the administrative exhaustion procedure on these claims. Defendants do not quarrel with this proposition, see e.g. Research Foundation Defs.' Reply Mem. L. pp. 1-2, and the Court accepts the proposition for purposes of this motion.[10]

### 3.    Plaintiff's Response to 1st Right to Sue Notice / Equitable Tolling

The next issue is whether Plaintiff has satisfied the second step of the administrative exhaustion procedure which places a 90-day time limit from receipt of the EEOC's right to sue notice on the commencement of a civil lawsuit. Plaintiff acknowledges receiving the First RTS Notice on June 10, 2007. Ninety (90) days thereafter was September 8, 2007. Plaintiff did not commence the instant action until June 5, 2008.

While Plaintiff correctly refrains from arguing that the Second RTS Notice (relative to the picture posting claims) provides the basis for the Title VII, ADA, and ADEA claims addressed in the First Division Complaint, see Lo v. Pan American World Airways, Inc.,

---

[10]To the extent that Plaintiff asserts Title VII, ADA, and ADEA claims based upon conduct occurring while she worked at the Research Foundation but which were not included in the First Division / EEOC Complaint, those claims are barred for failure to assert them in an administrative agency complaint within 300 days of their occurrence.

787 F.2d 827, 828 (2d Cir. 1986)(*per curiam*);[11] Daniel v. Long Island Housing Partnership,

Inc., 2009 WL 702209, at *6 (E.D.N.Y March 13, 2009);[12] Dahbany-Miraglia v.

Queensboro Comm. College, 2004 WL 1192078, at *3 (S.D.N.Y. May 27, 2004),[13] she

argues that the running of the 90-day period should be equitably tolled during the ensuing

period because she suffered from emotional and physical disabilities brought on by

Defendants' treatment of her during her employment.

> [T]he 90-day rule may be equitably tolled in "rare and exceptional circumstance[s]," Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (internal quotation marks omitted), in which a party is "prevented in some extraordinary way from exercising [her] rights," Johnson v. Nyack Hosp., 86 F.3d 8, 12 (2d Cir. 1996) (internal quotation marks and alteration omitted); see also ZerilliEdelglass v. N.Y.C. Transit Auth., 333 F.3d 74, 80 (2d Cir. 2003); Smith v. Chase Manhattan Bank, No. 97 Civ. 4507(LMM), 1998 WL 642930, at *4 (S.D.N.Y. Sept.18, 1998).

> "When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has 'acted with reasonable diligence during the time period she seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply.'" Zerilli-Edelglass, 333 F.3d at 80-81 (quoting Chapman v. ChoiceCare Long Island Term Disability Plan, 288 F.3d 506, 512 (2d Cir. 2002)); see also South v. Saab Cars USA, Inc., 28 F.3d 9, 12 (2d Cir. 1994) (noting that the principles of equitable tolling do not extend to what "is at best a garden variety claim of excusable neglect") (citation and quotation marks omitted). The doctrine is "highly case-specific," and the "burden of demonstrating the appropriateness of equitable tolling ... lies with the plaintiff." Boos v. Runyon, 201 F.3d 178, 184-85 (2d Cir. 2000); see also Smith, 1998 WL 642930, at *3 ("[A] court must consider the equities

---

[11] ("We hold that whether the present action is time barred must be determined with reference to only the first Notice of Right to Sue. Otherwise, the time limitations of 42 U.S.C.2000e-5(f)(1) would be meaningless, because potential Title VII plaintiffs could evade those requirements simply by seeking additional Notices of Right to Sue whenever they pleased." ).

[12] ("[B]ecause her two charges of discrimination pertain to the same alleged acts, plaintiff's time to file a claim in district court began to run once she received her first right to sue letter.").

[13] ("Generally, the time to bring a Title VII claim begins to run from the date that plaintiff receives her first right-to-sue letter.").

of the excuse offered to explain the delay and may extend the limitations period if warranted.").

Daniel,  2009 WL 702209, at * 7.

"The Supreme Court has identified four circumstances that will justify tolling the 90-day period: (1) where the plaintiff has received inadequate notice of the time limit; (2) where a motion for appointment of counsel is pending; (3) where the court has led plaintiff to believe that she has done everything that was required; and (4) where affirmative misconduct on the part of the defendant lulled plaintiff into inaction." Dahbany-Miraglia, 2004 WL 1192078, at *4 (citing Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 151 (1984)).

Plaintiff has not met her burden of demonstrating that the first three grounds apply. She acknowledges receiving the First EEOC Right to Sue notice on June 10, 2007.  This advised her, in bold and capital letters, that she could file a lawsuit under federal law based on the claims contained in the First EEOC Charge "**WITHIN 90 DAYS** of your receipt of this notice, or your right to sue based on this charge will be lost."  First RTS Notice.  The notice was adequate to advise Plaintiff of her rights, and Plaintiff does not argue otherwise.  There is also no evidence that a motion for appointment of counsel was pending during the 90-day period after receipt of the First RTS Notice, and there is no evidence that the federal court, the EEOC, or the New York State Division of Human Rights made any representation to Plaintiff that she had "done everything that was required" to bring the instant action.

On the fourth ground, Plaintiff asserts that she suffered from emotional and physical disabilities brought on by the Defendants' conduct at work that should be

17

considered as a basis for equitable tolling of 90-day time period.  In this regard, Plaintiff makes broad conclusory allegations that she suffered from mental, emotional, and physical conditions that were the "results of intentional infliction of emotional distress by defendants." Pl. Sur Reply to Research Foundation Defs' Mem. L., p. 2 [dkt. # 42-2]. However, the Second Circuit has noted that a "conclusory and vague claim, without a particularized description of how [the] condition adversely affected [plaintiff's] capacity to function generally or in relationship to the pursuit of her rights, is manifestly insufficient to justify any further inquiry into tolling." Boos, 201 F.3d at 185.  Plaintiff has not made a particularized showing that her condition prevented her from pursuing her rights during there period she seeks to toll, and, in fact,  the record evinces the opposite.  During the 90-day period after receipt of the First RTS Notice, Plaintiff filed her second complaint with the New York Division of Human Rights (dual filed with the EEOC) complaining of discrimination arising from the posting of her picture on the Research Foundation's website.

Plaintiff has failed to present sufficient evidence supporting the proposition that her emotional and physical difficulties were such that they prevented her from commencing a civil action within the 90-day period following receipt of the First RTS Notice, or that her condition was so extraordinary that the doctrine of equitable tolling should apply.  Further she has not presented evidence that anything done by Defendants, the Court, or the administrative agencies prevented her from timely commencing her civil action on the claims asserted in the First Division/EEOC Compliant. See Redlich v. Albany Law Sch. of

Union Univ., 899 F. Supp. 100, 104 (N.D.N.Y. 1995).[14]  Her lack of diligence in pursuing

the matter in this Court is not a basis for equitable tolling of the 90-day time limit. See

South v. Saab Cars, USA, Inc., 28 F.3d 9, 11 (2d Cir. 1994).

Having failed to commence this action within the allotted time period, or

demonstrate entitlement to equitable relief, all of Plaintiff's Title VII, ADA, and ADEA

claims arising from the facts alleged in support of her First DHR Complaint, are

dismissed.[15]

### b.    Picture Posting Claims

To the extent that Plaintiff asserts claims of employment discrimination under Title

VII, the ADA, or the ADEA arising from the posting of her pictures on the Research

Foundation's website, the claims must also be dismissed.  There is no dispute that the

pictures were posted well after Plaintiff's employment had ended.  Therefore, Title VII, the

ADA, and the ADEA, which address discrimination with regard to the terms and conditions

of employment, offer her no relief. The picture posting claims are dismissed.

### c.    NYSDHR Claims

To the extent that Plaintiff asserts claims under the New York State Human Rights

---

[14] (finding that  the doctrine is triggered in employment discrimination cases when Defendant
somehow "has prevented the plaintiff from learning of the existence of her cause of action . . . or in which the
plaintiff has relied on incorrect advice concerning the appropriate filing deadlines or the need to file at all.").

[15] Individual Defendants cannot be held liable for alleged violations of Title VII, the ADA, or the ADEA,
see  Wrighten v. Glowski, 232 F.3d 119 (2d Cir. 2000) (ruling individual Defendants are not subject to Title VII
liability) (citing Tomka v. Seiler Corp., 666 F.3d 1295 (1313) (2d Cir. 1995) ("individual defendants with
supervisory control over a plaintiff may not be held personally liable under Title VII") abrogated on other
grounds by Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998)); Menes v. CUNY Univ. of New York, 92 F.
Supp.2d 294, 306 (S.D.N.Y. 2000) (finding no personal liability for individual Defendants under the ADA);
Cherry v. Toussaint, 50 Fed. Appx. 476, 477 (2d Cir. 2002) (precluding individual ADEA liability), and,
therefore, there are no individual claims apart from the unexhausted claims against the Research Foundation.

Law ("NYSHRL") based upon conduct complained of to the New York Division of Human Rights, those claims are barred by the NYSHRL's election of remedies provision contained at N.Y. Exec. Law § 297(9).  This provides that "[a]ny person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction . . . unless such person had filed a complaint hereunder." N.Y. Exec. Law § 297(9).  "[N.Y. Exec. Law § 297(9)] deprives federal courts of subject matter jurisdiction where a plaintiff previously elected to proceed in an administrative forum." Chudnovsky v. Prudential Sec., Inc., 2000 WL 1576876, at *4 (S.D.N.Y. Oct. 23, 2000).  Thus, "[o]nce a complainant elects the administrative forum by filing a complaint with the Commission on Human Rights, that becomes the sole avenue of relief, and subsequent judicial action on the same complaint is generally barred . . . ." Moodie v. Fed. Reserve Bank of N.Y., 58 F.3d 879, 884 (2d Cir.1995).[16]  "Furthermore, once a plaintiff brings a case before the NYSDHR, he or she may appeal only to the Supreme Court of the State of New York." York v. Ass'n of Bar of City of New York, 286 F.3d 122, 127 (2d Cir. 2002) (citing N.Y. Exec. Law § 298).

Because both of Plaintiff's Division of Human Rights' complaints were dismissed based on findings of "no probable cause," the Court lacks subject matter jurisdiction to consider NYSHRL claims based on the same acts raised with the Division. DeWald v. Amsterdam Housing Authority, 823 F. Supp. 94, 99 (N.D.N.Y. 1993).  Accordingly, all NYSHRL claims asserted in the matter are dismissed.

_____

[16]The exception to this rule is a dismissal for administrative convenience made before the administrative agency renders a decision on the complaint.

<u>d.</u>     **Section 1983 Claims**

Plaintiff also asserts a claim or claims under 42 U.S.C. § 1983. <u>See</u> Compl. ¶ 1.  To

state a cognizable Section 1983 claim, a plaintiff must allege a violation of rights secured

by the Constitution or laws of the United States, and that such violation was committed by

a person acting under the color of state law. <u>See Kern v. City of Rochester, Fire</u>

<u>Department</u>, 93 F.3d 38, 43 (2d Cir. 1996).   "A § 1983 action may not, however, be

brought to vindicate rights conferred only be a statute that contains its own structure for

private enforcement, such as Title VII." <u>Patterson v. County of Oneida</u>, 375 F.3d 206, 225

(2d Cir. 2004).   Because Title VII, the ADA, and the ADEA contain their own structure for

private enforcement, Plaintiff may not bring a § 1983 claim premised upon the substantive

rights provided by these statutes. <u>Id.</u>  Nevertheless, Plaintiff may bring a § 1983 claim

premised upon substantive rights distinct from the employment discrimination statutes.

<u>Saulpaugh v. Monroe Community Hosp.</u>, 4 F.3d 134, 143 (2d Cir. 1993); <u>Patterson</u>, 375

F.3d at 225.

Assuming, *arguendo*, that Defendants acted under color of state law when dealing

with Plaintiff, Plaintiff has failed to plead sufficient factual matter, accepted as true, to

"state a [] claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570.  The only

factual reference in the Complaint to a violation of a right conceivably distinct from

Plaintiff's asserted employment discrimination claims is in paragraph 7d.  There, Plaintiff

asserts:

> Melissa [Necosia] with held [*sic*] knowledge that [John Sparaco] thought that
> an editorial I had written in 2005 was about him.  Melissa with held [*sic*] the
> information pass [*sic*] the time that I could have argued my constitutional
> rights thereby denying my rights.  The editorial opposed discrimination,

21

harassment and abuse. Exhibit pages 15 and 16.

Compl. ¶ 7d.

### 1.     First Amendment Retaliation

Affording all of the deference that is due *pro se* pleadings, this allegation, together with the some of the other allegations in the Complaint, could be construed as asserting a First Amendment retaliation claim.  <u>See</u> Pl. Sur-Reply to Def. Necosia's Motion, pp. 4-5; Pl. Sur-Reply to Research Foundation Defs.' Motion, pp. 7-8.[17]  However, the pleading fails to supply factual allegations making for a plausible claim.

 Where a public employee alleges retaliation arising out of the exercise of First Amendment free speech, she bears the burden to show: (1) the speech "was made as a citizen on matters of public concern rather than as an employee on matters of personal interest"; (2) she suffered an adverse employment action; and (3) there was a causal connection between the speech and the adverse action.  <u>Johnson v. Ganim</u>, 342 F.3d 105, 112 (2d Cir. 2003); <u>see</u> <u>Washington v. County of Rockland</u>, 373 F.3d 310, 320 (2d Cir. 2004).[18]

As to the first prong, speech relates to matters of public concern if it pertains "to any matter of political, social, or other concern to the community . . . determined by the content, form, and context of a given statement, as revealed by the whole record."

---

[17]Plaintiff asserts in her sur-reply Memoranda of Law that the Defendants took adverse action against her in retaliation for a letter that she wrote to the editor of a local newspaper in violation of her First and Fourteenth Amendment rights to free speech and equal protection.

[18]("To state a prima facie case of retaliation under § 1983, a plaintiff must demonstrate that: (1) his or her speech was constitutionally protected; (2) he or she suffered an adverse employment action; and (3) a causal connection exists between the speech and the adverse employment action so that it can be said that the speech was a motivating factor in the determination.").

Connick v. Meyers, 461 U.S. 138, 146-48 (1983); see Tiltti v. Weise, 155 F.3d 596, 602 (2d Cir. 1998).[19]  "[E]xpressing dissatisfaction with working conditions is not, by itself, speech on matters of public concern." Tiltti, 155 F.3d at 603; see also Luck v. Mazzone, 52 F.3d 475, 476 (2d Cir. 1995). "It is the providence of the court, as a matter of law, to determine whether a public employee's speech by 'context, form, and content' constitutes a public concern." Morrison v. Johnson,  2006 WL 2811802, at *12 (N.D.N.Y. September 28, 2006) (quoting and citing Connick, 461 U.S. at  147-48); see also Johnson, 342 F.3d at 112.[20]  "In deciding whether speech addresses a matter of public concern, 'the court should focus on the motive of the speaker and attempt to determine whether the speech was calculated to redress personal grievances or whether it had a broader public purpose.'" Harris v. South Huntington School Dist., 2009 WL 875538, at * 12 (E.D.N.Y. March 30, 2009)(quoting Lewis v. Cowen, 165 F.3d 154, 163-64 (2d Cir. 1999)).  "In performing its analysis, a court 'must look behind pretextual 'public concern' rationales proffered by plaintiffs and attempt to discern whether their conduct, taken as a whole, was actually meant to address matters of public concern or was simply a vehicle for furthering private interests.'" Id. (quoting Pappas v. Giuliani, 118 F. Supp.2d 433, 444 (S.D.N.Y. 2000)).

The document that Plaintiff refers to in the Complaint as "Exhibit pages 15 and 16" is an e-mail letter that she wrote to the Editor of the Daily Star newspaper asking that her letter be printed in a newspaper.  In the letter, Plaintiff complains of the actions of un-

---

[19](An employee's speech is "protected" only if it pertains to matters of "public concern.")

[20] (Although this inquiry is "fact-intensive," the Court may resolve this issue as a matter of law.)

named supervisors.  Compl. Ex. pp. 15-16.   A review of the context in which the letter was written, and the form and content of the letter itself, leads unmistakably to the conclusion that it is a grievance about the conditions of Plaintiff's employment and the problems she was having with her supervisor.  As stated in the Complaint, "[t]he editorial opposed discrimination, harassment and abuse." Compl., ¶ 7d.  The letter was clearly motivated by Plaintiff's personal grievances with her employer, and although she uses general terms and refrains from specifically naming her employer or supervisor, there can be no mistake that the letter did not address a matter of public concern but rather was written in Plaintiff's role as a disgruntled employee looking to vent her frustration with the circumstances of her employment.  Thus, assuming that the letter was published in the newspaper,[21] it is not a statement of public concern to which First Amendment protection would apply.  See Harris, 2009 WL 875538, at * 12; Morrison,  2006 WL 2811802, at *13.

    Assuming, arguendo, that First Amendment protection would apply to the letter, Plaintiff fails to satisfy the element of causation.   "To establish a casual connection, a plaintiff must show that the protected speech 'was a substantial motivating factor in the adverse employment action.'" Morrison,  2006 WL 2811802, at *14 (quoting Reuland v. Hynes, 2006 WL 2391163, at *5 (2d Cir. Aug. 21, 2006) and citing Morris v. Lindau, 196 F.3d 102, 110 (2d Cir.1999) and Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ., 444 F.3d 158, 167-168 (2d Cir.2006)).  Plaintiff does not specifically allege in the Complaint

---

[21] That assumption is not supported by either the Complaint, which does not allege that the e-mail letter was published, or by the cited exhibit pages. Exhibit page 15 contains a response from the newspaper editorial staff indicating that the "letter is too broad to be published as is.  Would you please narrow it down by mentioning perhaps the industry these supervisors to which you are referring are in." Compl. Ex. p. 15. Plaintiff responded by indicating: "Now you want supervisors named?  I didn't think my letter was any broader than others that I have read in your newspaper. I want my letter to run on Monday, July 11th.  If you can't please let me know.  I will print it out and go around and see everyone in town." Id.

24

that any adverse action was taken against her as a result of the letter.  Indeed, the only

allegation concerning the letter and Plaintiff's constitutional rights is that Melissa Necosia

"withheld knowledge" that Sparaco thought the letter was about him, thereby preventing

Plaintiff from "argu[ing] [her] constitutional rights." Compl. ¶ 7d.  She does not assert that

Necosia, or any other defendant, took adverse action against her because of the letter.

Hence, Plaintiff does not even make a "[t]hreadbare recital" to support this element of the

cause of action.  Iqbal, 2009 WL 1361536, at *13.

The mere allegations that Defendant Sparco "retaliated" against her in 2006 and

2007, see Compl. ¶¶ 5e-5f;[22] Compl. ¶ 5;[23] Compl. ¶ 5g,[24] are insufficient to support a claim

that must be premised on the factual contention that the letter to the Editor, as opposed to

the 2005 sexual harassment complaint Plaintiff filed against Sparaco, was a substantial

motivating factor in the adverse actions. See Iqbal, 2009 WL 1361536, at *13.[25]  Plaintiff

has not alleged, much less demonstrated, that the letter to the Editor was a substantial

motivating factor in Sparaco's conduct that caused an actionable adverse employment

action. See Washington, 373 F.3d at 320;[26] Deters v. Lafuente, 368 F.3d 185, 189 (2d Cir.

---

[22](alleging that in January 2006, when Plaintiff returned to work, Sparaco "retaliated" by refusing to sign her time sheets, placing her desk in the back of the classroom behind a filing cabinet, by placing her computer "behind a partition without any files to do [her] job," by failing to inform her of staff meetings, and by "chang[ing] [Plaintiff's] job description.").

[23](alleging that her termination by Sparaco on July 17, 2006 was "unlawful retaliation and adverse employment action").

[24](alleging that, in July 2007, Sparaco posted Plaintiff's picture on the HEP website "to retaliate").

[25]("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

[26]("In the context of a First Amendment retaliation claim, [the Second Circuit has] held that '[o]nly
(continued...)

2004);[27] but see Dillon v. Morano, 497 F.3d 247, 254 (2d Cir. 2007).[28]  The naked and

formulaic recitation of "retaliation" by Sparaco fails to support a plausible First Amendment

claim. See Washington, 373 F.3d at 321.[29]  For these reasons, the First Amendment

retaliation claim is dismissed.

### 2.    Equal Protection

Plaintiff also contends in her opposition and reply papers that she asserts a

Fourteenth Amendment equal protection claim.  The Equal Protection Clause "is basically

a direction that all persons similarly situated should be treated alike." City of Cleburne v.

Cleburne Living Center, 473 U.S. 432, 439 (1985).  In order to prevail on an equal

protection claim, Plaintiff must establish that (1) she was treated differently than others

similarly situated, and (2) this differential treatment was motivated by an intent to

discriminate on the basis of race, to punish or inhibit the exercise of constitutional rights,

or by a malicious or bad faith intent to injure the person. Diesel v. Town of Lewisboro, 232

F.3d 92, 103 (2d Cir. 2000); Lovell v. Comsewogue Sch. Dist., 214 F. Supp.2d 319,

---

[26](...continued)
retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action.'").

[27]("With respect to hostile work environments, we have stated that our precedent allows a combination of seemingly minor incidents to form the basis of a constitutional retaliation claim once they reach a critical mass.")(citation and interior quotation marks omitted).

[28]("We agree with the district court that Morano's refusal to sign Dillon's 1997 performance review, the transfer to the Elder Abuse Unit, the assignment of organizing the evidence room, and Dillon's exclusion from certain meetings did not constitute adverse employment actions.").

[29]("To satisfy the causal connection requirement of the prima facie case, plaintiffs must show that their criticisms of RCSD were 'a substantial motivating factor' in RCSD's decision to initiate administrative disciplinary charges against them. Deters v. Lafuente, 368 F.3d 185, 190 (2d Cir. 2004) (citing Morris, 196 F.3d at 111). To do so, plaintiffs must aver some 'tangible proof' demonstrating that their protected speech animated RCSD's decision to initiate disciplinary charges. Id. (internal quotation marks and citations omitted). They 'may not rely on conclusory assertions of retaliatory motive.' Id.").

26

321-22 (E.D.N.Y. 2003).  While Plaintiff has asserted that she was terminated because she did not speak Spanish and that she was "the only employee eliminated," Compl., ¶ 5, she has not asserted that any similarly situated employee was treated differently than she or that she was discharged with an intent to discriminate on the basis of race, to punish or inhibit her exercise of constitutional rights, or by a malicious or bad faith intent to injure her.  She asserts, at most, a "class of one" theory of equal protection[30] that the Supreme Court has rejected in the public employment context. Engquist v. Oregon Department of Agriculture, --- U.S. ----, 128 S. Ct. 2146, 2151, 170 L. Ed.2d 975 (2008).[31]  Therefore, any equal protection claim asserted in the Complaint is dismissed. See Conyers v. Rossides, 558 F.3d 137, 152 (2d Cir. 2009).[32]

### e.    Additional Claims

To the extent that Plaintiff asserts in her opposition and sur-reply papers that she has pled cognizable claims under the Occupational Safety and Health Act, the Fair Labor Standards Act, or the Family and Medical Leave Act, those claims must be dismissed because she has not asserted facts in the Complaint to make out plausible claims under

---

[30]"The 'class-of-one' theory holds that 'the Equal Protection Clause forbids public employers from irrationally treating one employee differently from others similarly situated, regardless of whether the different treatment is based on the employee's membership in a particular class.'" Conyers v. Rossides, 558 F.3d 137, 152 (2d Cir. 2009)(quoting Engquist v. Oregon Department of Agriculture, --- U.S. ----, 128 S. Ct. 2146, 2150, 170 L. Ed.2d 975 (2008)).

[31](The "traditional view of the core concern of the Equal Protection Clause as a shield against arbitrary classifications, combined with unique considerations applicable when the government acts as employer as opposed to sovereign, lead us to conclude that the class-of-one theory of equal protection does not apply in the public employment context.").

[32]("Because Conyers, like Engquist, does not assert an employment-related equal protection claim arising out of his membership in any particular group, but rather a claim based upon a general allegation that an agency 'treated a[ ] [prospective] employee differently from others for a bad reason, or for no reason at all,' his equal protection claim cannot survive defendant's motion to dismiss.")(quoting Engquist, 28 S. Ct. at 2151).

these statutes.

To the extent that Plaintiff asserts state law common law claims, the Court declines to exercise supplemental jurisdiction over such claims and, accordingly, all such claims are dismissed without prejudice.

## IV.    CONCLUSION

For the reasons discussed above, Defendants' motions to dismiss the claims in this matter [dkt. # 27 & dkt. # 31] are **GRANTED**, and all claims asserted in the matter are **DISMISSED**.  All claims, with the exception of claims asserted under the Occupational Safety and Health Act, the Fair Labor Standards Act, the Family and Medical Leave Act, and state common law, are dismissed with prejudice. Claims purportedly brought under the Occupational Safety and Health Act, the Fair Labor Standards Act,  the Family and Medical Leave Act, and state common law are dismissed without prejudice.

**IT IS SO ORDERED**

DATED:May 28, 2009

Thomas J. McAvoy
Senior, U.S. District Judge

28